LUBBOCK BUS COMPANY, Appellant,

v.

Houston PEARSON, Appellee.

No. 6467.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 24, 1955.

Rehearing Denied Feb. 21, 1955.

occurring on a busy street in Lubbock, Texas, on or about May 27, 1952. The case was tried to a jury upon special issues submitted and judgment was rendered upon the verdict awarding personal damages to appellee in the sum of $34,000 and property damages in the sum of $1,400, from which judgment appellant has perfected an appeal.

This case was previously before this Court on appeal, as reported in 266 S.W.2d 439. In the trial of the case on that appeal, as well as in the trial of the case on this appeal, appellee alleged and claimed that his injuries resulted from the motor vehicle collision of date May 27, 1952, while appellant claimed on the former trial and claims here that appellee's injuries, if any, resulted from a fall he experienced in his own home on June 11, 1952, early one morning when he got up to turn off an alarm clock.

In Points 1 and 2, appellant charges error for the alleged reason that the trial court limited the jury's consideration to that for impeachment purposes only of a certain statement admitted in evidence at this trial and made by appellee at the former trial. The record reveals that appellee was travelling east on Broadway, a four-lane street, about 4:00 p. m. o'clock, while the weather was damp and misty, when he stopped for a red light to change at the intersection of Broadway with Avenue H which extended north and south. Immediately after he stopped for the said light to change, appellant's city bus loaded with passengers collided with the rear end of appellee's Cadillac automobile, running head on into the back of the same, knocking the Cadillac some 12 to 15 feet or more into the street intersection but the two motor vehicles were locked together when they stopped. The testimony given by appellee reveals that the collision caused a jolt or jar that popped his back and neck which stunned him momentarily; that the jolt or jar knocked his hat off and it fell into the back seat of his car; that after a few moments, appellee got out of his car, got his hat and talked to the bus operator who said his brakes failed him; that the bus operator called his bus superintendent and

Klett, Bean & Evans & Trout & Jones, Lubbock, for appellant.

Bob Huff and J. H. Splawn, Jr., Lubbock, (Ted Odom, of counsel), Lubbock, for appellee.

PITTS, Chief Justice.

Appellee, Houston Pearson, filed suit against appellant, Lubbock Bus Company, a corporation, for personal and property damages in the total sum of $56,250, resulting from an alleged motor vehicle collision

the city traffic officers with whom appellee talked upon their arrival; that the bus superintendent, Mr. Buck, told him the bus company would have his car repaired; that he there at the scene of the collision told a policeman that he didn't think anybody was hurt and that at that time he didn't think anybody was hurt much; that he thereafter drove home that afternoon to his farm in Crosby County; that his back and neck were sore but he thought the soreness would soon pass away without giving any trouble; that upon his arrival at home, his wife rubbed and treated his back and neck with Ben Gay and applied a heating pad; that for several days he often experienced some pain, burning sensations and discomfort from the time of the car collision but thought he could pass it off; that he did not realize the seriousness of his injuries for some 10 days or two weeks after the collision when he got up early one morning to turn off an alarm clock and fell in the floor after taking a few steps and could not get up; that he needed help to get back in bed after which Doctor T. S. Holmes, of Ralls, was called; that Dr. Holmes examined him and sent him to a hospital in Lubbock where other doctors treated him for some time; that his pain and suffering have not been relieved; that he still suffers constant pain in his lower back, is bothered with nervousness, can't sleep and his left leg is partially paralyzed; that when he coughed or sneezed severe pains ran down his back and legs; that it seems he is steadily getting worse and has to use a cane when he walks; that his age was 31 years and he had enjoyed good health prior to the collision and engaged in usual farm labor in the operation of a large farm. Appellee's testimony concerning the seriousness of his injuries is supported by medical testimony.

In connection with appellee's testimony about falling on June 11, 1952, while turning off an alarm clock early that morning, he made the following statement in response to a question propounded by his counsel on direct examination:

"Well, as I say I got out of bed and started for the alarm clock, got three or four steps and this pain hit me in the back, I just doubled up and drew over there and finally went down to the floor; my wife hollered at me to cut the alarm clock off, something had woke her up, I told her that I was down on the floor and couldn't get up and that she would have to cut it off and help me get back in bed. So, she tried to and I couldn't stand for her to pull me—to move me, so she went out and got one of the colored people to help her put me on the bed."

The statement made by appellee at the former trial was admitted in evidence at this trial, but appellant here charges it was limited by the trial court to be considered by the jury only for impeachment purposes and the same is as follows:

"Well, I had the alarm clock set and it went off and I started to get out of bed to turn it off and I just fell flat on my face. I was paralyzed. I just couldn't hardly move and had extreme pain in my back."

The statement last quoted was first introduced in the last trial of this action by appellant without its purpose being limited in any way by the trial court, as reflected on Page 82 of Vol. I of the Statement of Facts. However, appellee then objected to its introduction. The contents of the said statement were again challenged by appellee's counsel who objected to it and asked that any testimony concerning it be stricken but his objection was overruled and his request denied by the trial court. Pages 252–53, Vol. II, S.F. The statement in its entirety was again introduced in evidence, Page 555, Vol. III, S.F., when, upon objection made by appellee, the trial court then held that the statement was admissible only for impeachment purposes, and so instructed counsel. Insofar as we are able to determine from the record, the trial court never did instruct the jury that the statement in question must be limited to the use for impeachment purposes only while the said statement had then already been twice read to the jury and its contents used more than once by appellant in pro-

pounding hypothetical questions to doctors while examining them as witnesses.

In support of its contentions made, appellant cites several authorities, among them being the late case of Texas General Indemnity Co. v. Scott, 152 Tex. 1, 253 S.W.2d 651, 655, from which it quotes the following rule:

"Undoubtedly the general rule is that any statement, written or oral, made by a party or on his behalf, which is inconsistent with his present position, and any act or conduct of a party from which it may be inferred that the facts in issue are not as he now claims, may be introduced in evidence against him, as an admission."

■ In our opinion, the provisions of the said rule were in no way violated by the court's ruling here made. It appears that the statement of appellee made at the former trial and introduced at this trial by appellant is not inconsistent with the position appellee has taken at this, the second trial of the case. Neither are the facts and issues indicated in the said statement introduced in the first trial any different from those claimed and presented by appellee in the second trial, the results of which are on appeal before us. The contents of the statement in question are substantially the same as the testimony given by appellee about the same matter at the second trial. A comparison of the said statement with that statement made at the second trial, previously herein quoted, concerning the occasion when appellee fell on the floor and could not get up, will reveal that the two statements are substantially the same, except that the later statement gives more details. We have failed to find any conflict or inconsistencies in the two statements.

Insofar as the record reflects, the purpose of the introduction of the statement in question was never limited to that for impeachment purposes only by instructions given to the jury. We have failed to find from the record where such instructions were given to the jury and no such instructions to the

jury has been pointed out to us by counsel. The contents of the said statement were at least twice introduced before the jury by appellant and used by it in propounding hypothetical questions to doctors while examining them as witnesses.

As a result of such evidence heard, appellant's defense concerning this matter was submitted to the jury in Special Issue No. 25 in the following language:

"Do you find from a preponderance of the evidence, that the manner in which Houston Pearson got out of bed to turn off an alarm clock on or about June 11, 1952, was the sole proximate cause of his injury or injuries, if any?"

To such issue, the jury answered, "It was not the sole proximate cause." The jury verdict also convicted appellant's bus driver of several acts of negligence which it found were a proximate cause of the collision in question. The jury verdict likewise acquited appellee of all charges of negligence made against him by appellant. None of the jury findings have here been challenged by appellant. At any rate, the general purport of the statement in question having been again introduced at the second trial by appellee on direct examination, we think it was immaterial whether the statement previously made by appellee on a former trial was again introduced or not.

In our opinion, under the state of the record here presented, no prejudicial error has been shown concerning the trial court's ruling about the admissibility of the statement in question and appellant's Points 1 and 2 are overruled.

Appellant contends in Point 3 that error was committed by the trial court in permitting appellee's attorney to state to the jury on voir dire examination that appellee suffered permanent back injuries as a result of an automobile collision. In presenting its point, appellant set out more fully the alleged language used by appellee's attorney upon voir dire examination of the jury by saying he "stated that the 'facts as will be presented from the plaintiff's standpoint' are among others, that 'as a result of being

hit by this bus he (plaintiff) has suffered injuries to neck, and injuries of a *permanent* nature to his back.' "

It has been held that the members of a jury panel must know something of the nature of a case and the contentions of the respective parties before they could intelligently answer many questions essential to their fitness as jurors. Ft. Worth & D. C. Ry. Co. v. Kiel, Tex.Civ.App., 195 S.W.2d 405. The court there further held that a broad latitude should be allowed counsel on voir dire examination of a jury panel in order that peremptory challenges may be intelligently exercised and that such examination is largely within the discretion of the trial judge whose judgment in the matter will not be reviewed on appeal unless it clearly appears that his discretion has been abused. We think these rules are sound and logical. In our opinion, it has not been shown that the trial court abused its discretion in the matter here presented for which reason appellant's contentions here made in Point 3 are overruled.

In Points 4 and 5, appellant charges that the trial court committed error in permitting the introduction of testimony to the effect that appellant's bus driver was given a ticket by a traffic officer, who was not present at the scene of the collision, for operating the bus with defective brakes and that the traffic officer thereafter filed a complaint against the bus driver.

The record reveals that appellee testified without objection that "the cop gave the bus driver a ticket." The bus driver testified that the officer gave him a ticket. When he further testified that the ticket was given to him for driving with defective brakes, appellant objected on the grounds it called for a conclusion of the witness but the objection was overruled. The bus driver also testified that the bus brakes were defective. In fact, the record is replete with evidence to the effect that the bus brakes were faulty. There was testimony given without objections to the effect that the bus driver stated at the scene of the collision that the bus brakes did not work and that his brakes failed him. Both the bus driver and a policeman examined the brakes at the scene of the collision and found them faulty, hence the ticket was given the bus driver and a complaint was filed against him. There was much testimony given by witnesses of both parties concerning the faulty bus brakes and how they would operate when in good condition. The jury found the brakes were defective and that such was a proximate cause of the collision. The record likewise reveals that the superintendent of the bus company, Mr. Buck, was called by the bus driver. Mr. Buck went immediately to the scene of the collision where he observed conditions and participated in the conferences held. Mr. Buck told appellee the bus company would repair his car. Appellant proved by the bus driver that he paid a fine on the complaint made against him to avoid trouble. Objections to evidence are unavailing when similar evidence to the same effect is offered and received without objections. Rowe v. Liles, Tex.Civ.App., 226 S.W.2d 253, writ refused, and other authorities there cited. Certainly, objections should be unavailing when the party who complains offers similar evidence to the same effect. In our opinion, under the state of the record presented, appellant's Points 4 and 5 must be overruled.

In Point 6, appellant charges error because the trial court permitted the bus driver to testify over appellant's objections to the effect that he paid a fine for operating the bus with defective brakes. As previously stated, appellant also proved by the bus driver that he paid a fine and it also cross examined the bus driver about the faulty brakes, in addition to much other evidence given about faulty brakes as previously stated. For the reasons just previously herein stated and the authorities there cited, appellant's Point 6 is overruled.

In Points 7, 8 and 9, appellant charges error because the trial court permitted the bus driver to testify over appellant's objections that he was operating the bus with defective brakes or without any brakes and the said traffic officer to testify over appellant's objections that he found

the bus had defective brakes when he appeared at the scene of the collision soon after it happened. As previously stated, the record is replete with testimony from witnesses of both parties, much of it without objections, about the faulty brakes of the bus, how they should work and how they do normally work. The record reveals that the first statement made to appellee by the bus driver immediately after the collision was that his bus brakes failed him. Such testimony was admitted without objections. The bus driver showed the said traffic officer how defective the bus brakes were and further testified that he could have avoided the collision if his bus brakes had been good. Under the state of the record presented, for the reasons previously stated and under the authorities previously cited, appellant's Points 7, 8 and 9 are overruled.

In Point 10, appellant complains of the action of the trial court in sustaining appellee's objections to a certain question propounded by appellant's attorney to Dr. D. D. Cross upon cross examination concerning the use of intricate medical terms taken from some book in propounding a question to the Doctor about appellee's injuries. The record reveals that Dr. Cross had previously testified concerning appellee's injuries and among other testimony given he further testified that in his opinion "the classic symptoms of a ruptured intervertebral disc would be pain in the back;" that Dr. Cross further testified that appellee "did have at least two of the cardinal symptoms of a ruptured intervertebral disc or a damaged disc at the level of the fifth lumbar vertebra." Thereafter, appellant's counsel propounded the following question to Dr. Cross upon cross examination:

"Dr. Cross, do you know whether or not the medical authorities recognize that, with very infrequent exceptions, the first symptom of a ruptured lumbar disc is pain in the back, which is of two types. The most usual story is that the patient, when bending forward in order to lift a heavy object, felt a sudden slip or catch in his back. Then, when he tried to straighten up afterwards, the

movement was attended with excruciating pain in the lumbar region. Does the medical profession recognize that to be true or not?"

Whereupon, appellee's counsel objected to the question as propounded upon the grounds, in effect, that it was evident that appellant's counsel was reading from some unknown medical book, with which Dr. Cross may not be familiar, and a book not recognized as an authority, for which reason it would be hearsay testimony. The trial court sustained the objections of appellee's counsel, for which reason appellant here complains in Point 10.

Appellant contends in effect that, if the question was a permissible one, it was immaterial whether he, in forming the question, read from a book or his language used was taken from some other source. We think appellant's contentions in this respect are sound. When appellant's counsel propounded the question, the language he used became his own, since the language used by him did not reveal any borrowed language or any quotation from any other authority. The language used by most of us we got from books or from some other source. Nevertheless, when we use the language in our own way without giving others credit for it, such language becomes our own language. It is our opinion that the question as propounded was a permissible one on cross examination and the trial court should have permitted Dr. Cross to have answered the question if he could. Hartford Accident & Indemnity Co. v. Harris, Tex.Civ.App., 138 S.W.2d 277. However, we do not think the refusal to permit Dr. Cross to answer the said question constituted reversible error. An answer either way of Dr. Cross as to what the medical profession may or may not recognize, with few exceptions, could not have been very material in this case, particularly in view of the lengthy testimony given by Dr. Cross and three other doctors concerning every possible view apparently in connection with appellee's injuries. The testimony of Dr. Cross alone covers 90 pages in the statement of facts and at least

half of it was cross examination by appellant's counsel, which testimony apparently covered every phase of pertinent facts known by Dr. Cross about the issues raised. For these reasons, no reversible error being shown, appellant's Point 10 is overruled.

A careful examination of the record and of appellant's points of error reveals no reversible error committed. The judgment of the trial court is therefore affirmed.