Bruce Paul KOLLMORGAN, Appellant,

v.

Kathy Money SCOTT et al., Appellees.

No. 274.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Nov. 5, 1969.

Rehearing Denied Nov. 19, 1969.

Scott Talbert, John Mustachio, Alice Giessel, Talbert, Giessel, Barnett & Stone, Houston, for appellant.

Joseph Farcher, W. Douglas Matthews, Houston, for appellees.

SAM D. JOHNSON, Justice.

Personal injury action arising from a rear-end automobile collision. The suit was initiated by Kathy Irene Money, by her next friend, Harold Money, against the appellant, Bruce Paul Kollmorgan.

It appears that the plaintiff, Kathy Money, had stopped her automobile at a street intersection in response to a signal light which was red. The defendant, Kollmorgan, was driving his automobile in the same direction and was attempting to drink a malted milk. As he approached the signal light where the plaintiff stopped, he spilled the malted milk in his lap. Kollmorgan thereupon attempted to clean the malt from his trousers without reducing speed (approximately 20 to 25 miles per hour) or without pulling his car off the roadway. It was under these circumstances that the Kollmorgan vehicle struck the plaintiff's automobile from the rear.

In response to special issues the jury found the defendant was driving at an excessive speed, that he failed to keep a proper lookout, that he failed to apply his brakes properly and that each of these was a proximate cause of the accident. The jury further found that Kollmorgan was not faced with a sudden emergency and that the accident was not the result of an unavoidable accident. Subsequent to the

jury's verdict, the defendant filed a motion for remittitur asserting that certain amounts were in excess of those which could be supported by the evidence. The trial court, at least in part, granted this motion for its order reduced the jury award in the sum of $700.71. Following the remittitur the trial court's judgment was in the sum of $5,299.99.

Appellant's first point of error alleges the improper injection of liability insurance in the voir dire examination and in jury argument. It appears that Mrs. King, a prospective juror, was questioned regarding her husband's business as an insurance claims specialist. She testified that her husband was employed in such capacity and that her husband discussed his work with her as much as any husband does. She responded that she could put aside the things that her husband had told her about his work and that she could return a verdict without problems. A second prospective juror, Mr. Brooks, testified that he ran an insurance agency and that his wife worked with him. He described the breakdown of duties between himself and his wife in this business. These two inquiries do not indicate that counsel for the plaintiff engaged in less than a good faith examination of the jury panel. We find nothing in this interrogation from which it might be reasonably inferred that the defendant was insured. Dennis v. Hulse, 362 S.W.2d 308 (Tex.Sup.1962). "We believe that in the absence of a clear inference of the existence of insurance in the case, and where the attention of the jury panel has not been directed to the area of liability insurance, a good faith inquiry into significant connection, either directly or indirectly through family or close friends or neighbors, with the insurance industry will not of itself constitute a showing of such prejudice as would be reasonably calculated to cause a miscarriage of justice." South Austin Drive-In Theatre v. Thomison, 421 S.W.2d 933, 941 (Tex.Civ.App. 1967). We find no injection of liability insurance in the instant jury argument and

no indication that the alleged errors caused the rendition of an improper judgment. Kingham Messenger & Delivery Service, Inc. v. Daniels, Tex.Civ.App., 435 S.W.2d 270, no writ hist. Appellant's first point of error is overruled.

In another point of error complaint is made of the trial court's allowing a physician to give his medical opinion based on X-ray findings without producing the X-rays in court. Appellant contends this to be in violation of the best evidence rule. This issue has previously been determined contrary to appellant's contention. Maryland Casualty Co. v. Dicken, Tex. Civ.App., 80 S.W.2d 800, err. dismd. X-ray films are not subject to interpretation by lay jurors as are other photographs, maps, or representations of physical objects employed as evidence. X-ray films require explanation by medical experts and are not intelligible without an interpretation by one skilled in the art. "X-ray films are merely illustrations of the subject it represents, and is not the best evidence of the condition of the part of the body shown thereby." Maryland Casualty Co. v. Dicken, supra, at p. 804. The best evidence is the doctor's testimony concerning his interpretation of the film and not the film itself. This point of error is overruled.

Appellant's second point of error alleges fundamental error and gross impropriety during the voir dire examination and jury argument in violation of Rule 269, Texas Rules of Civil Procedure. Appellant's third point asserts the cumulative effect of ponits 1 and 2. Appellant alleges numerous instances of alleged error contained in appellee's jury argument. Included are allegations of arguments commenting on objections made by opposing counsel, argument which informs the jury of the effect of their answers, calling on the jury to rebuke litigants and improve social conditions by their verdict; commenting on the results of other trials, commenting on matters not before the jury, commenting upon failure of opposing coun-

sel to produce witnesses where it was not shown that such witnesses were under the control of such party, and personal criticism, censor and abuse of opposing counsel. It appears, however, that appellant's counsel attempted to preserve by objection and request for instructions only three of the alleged improper arguments. We note that in those instances where no objection or request for instruction was made, that the arguments were not of an incurable nature, that is, "so inflammatory that its harmfulness could not be eliminated by an instruction to the jury to disregard it." Otis Elevator Co. v. Wood, 436 S.W.2d 324, 333 (Tex.Sup.1968).

We therefore proceed to consider those instances wherein timely objection was made. First, plaintiff's counsel asked of the absence of the defendant who had been excused by the court during the closing argument. Upon objection being made, the jury was instructed to disregard the statement of counsel. Second, counsel referred to the absence of impeaching evidence against the plaintiffs. Objection was made and overruled. Third, plaintiff's counsel criticized opposing counsel's argument, stated that such arguments were used time and time again in other cases, named other lawyers who had used such argument, and asserted that he, himself, had used it. The court then instructed counsel to stay within the record and talk about the evidence.

Little can be said for the propriety of counsel's argument to which objection was made. No more can be said for the propriety of those arguments here complained of to which objection was not made. The complained of argument falls short of what might ethically be expected of counsel and much of it is lacking in candor and respect. Plaintiff's counsel before this Court, who was not plaintiff's trial attorney, has conceded "certain improprieties" in the jury argument.

The true effect of any jury argument cannot be altogether accurately determined from the record. This is particularly true of a jury argument which, in a personal way, contains insinuations and reflections upon opposing counsel. Such argument can only be fairly evaluated from the vantage point of the trial judge. It is upon the court that the responsibility for controlling the argument of counsel in the trial must be reposed. Rule 269, T.R.C.P.

■ Nevertheless, upon the authority of Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953), we overrule appellant's contention. We do not find that the complained of jury argument was reasonably calculated to cause and probably did cause the rendition of an improper judgment herein. "If the evidence is such that we believe the jury would in all probability have rendered the same verdict that was rendered here, whatever the argument of the defendant's counsel or lack of it, how can we logically say that the argument probably caused the rendition of an improper judgment based on that verdict?" Lumbermen's Lloyds v. Loper, 153 Tex. 404, 269 S.W.2d 367 (1954).

■ Appellant's 4th point of error is directed to the jury's award of $3,000 for future medical and hospital expenses. Appellant asserts that there was no evidence warranting the submission of an issue thereon, and in the alternative that the jury's finding was so excessive as to require a reversal and new trial. Defendant timely filed a motion in the trial court to limit recovery which was, at least in same measure, conceded by the plaintiff to be good, in that the full amounts awarded by the jury were in excess of those supported by the evidence. It was in this connection that the future medical finding was determined to be $300 in excess of that supported by the evidence and a remittitur in such sum was ordered by the trial court. The total judgment of the trial court, including all factors, was in the sum of $5,299.29. Of this sum the future medical and hospital expenses accounted for $2,700.

A Dr. Lindley was called by the plaintiff and it is upon his testimony that reliance is placed for sustaining future medical

expenses. In her brief plaintiff deduces that "the jury simply felt that Kathy Money Scott would, based on Dr. Lindley's testimony, continue to have approximately $300.00 in medical expenses every four years over an average life span of 60 years." Dr. Lindley had not examined the plaintiff in approximately three years prior to trial. He was asked a hypothetical question concerning the medical probability for Kathy Money in the future. He responded, "Well, if she has continued to have symptoms, complaining of pain, stiffness and—for the past four years—I think that one could assume she will continue to have them for an unknown period of time in the future. This is something nobody knows. Certainly not me." After testifying that the plaintiff might have further medical expenses in the future, he was asked, based upon reasonable medical probability what amount she might have to expend in the future. He responded, "That is difficult—that is a hard question. * * I think that the only way I could answer that would be to look at the expenses she has incurred annually in the past, and use that as an idea of what might occur for a period of time in the future."

The doctor's testimony relative to future medical and hospital expenses is seen to be less than affirmative. In addition to its brevity, it is highly uncertain and indefinite. We conclude that this award, having only the most nebulous support in the record, was excessive in the sum of $1,500. See Graham v. Morris, 366 S.W.2d 792, no writ hist.

Because of such excessiveness, this Court is under a duty to reverse and remand this case unless appellee, plaintiff below, files a remittitur in writing in the sum of $1,500 within 14 days from the date of this opinion; otherwise said judgment will be reversed and the cause remanded for a new trial.

### ON FILING OF REMITTITUR

Appellees, Kathy Money Scott and Harold R. Money, have filed herein a remittitur in the amount of $1,500, as suggested by this Court. The judgment of the trial court in favor of appellees will be reformed in accordance with the remittitur, as to allow appellees a recovery of $3,799.29 against the appellant, Bruce Paul Kollmorgan. The judgment as thus reformed will be affirmed. The cost of appeal will be taxed against the appellees, Kathy Money Scott and Harold R. Money.

The judgment of the trial court is reformed and affirmed.